Carmen **DENIS MALDONADO** et al.,
Plaintiffs-Appellants,

v.

**SAVINGS AND LOAN FUND ASSOCIA-
TION OF the EMPLOYEES OF the
GOVERNMENT OF PUERTO RICO,**
Defendant-Appellee.

**No. 4847.**

United States Court of Appeals
First Circuit.

May 2, 1955.

Jorge L. Cordova, San Juan, Puerto Rico, with whom M. A. Garcia del Rosario, San Juan, Puerto Rico, was on brief, for appellants.

Luis F. Sanchez Vilella, San Juan, Puerto Rico, with whom E. Ramos Antonini, Victor Gutierrez Franqui and Gutierrez, Saldana & Sanchez, San Juan, Puerto Rico, were on brief, for appellee.

Before MAGRUDER, Chief Judge, and BIGGS * and WOODBURY, Circuit Judges.

### WOODBURY, Circuit Judge.

This is a consolidated appeal from two final decisions of the Supreme Court of Puerto Rico affirming judgments of the Superior Court, San Juan Part, dismissing two similar suits for declaratory judgments. In our opinion we do not have appellate jurisdiction. We shall, therefore, discuss that matter only, and state only the facts bearing directly upon it.

In 1921 the Legislature of Puerto Rico by Act No. 52 established a system of mutual insurance against physical disability or death for the benefit of employees of the Insular Government. Under the system as it was developed by subsequent amendments [1] to the original Act, the defendant-appellee Association assesses each of its employee members a fixed sum depending in amount upon the class of his insurance every time a fellow member is disabled or dies, and pays the product of the assessment, less certain deductions to be mentioned presently, over to the disabled member or to the beneficiaries or heirs of the deceased member as the case may be. Only four assessments are permitted in any one month and claims must be paid strictly in chronological order.

Claims, apparently rather consistently, exceeded four per month with the result that by 1937 there was a substantial accumulation of unpaid claims the oldest of which had been pending for almost four years. To remedy this situation the Legislature by its amendment of that year (re-enacted with insignificant changes in the Amendment of 1942), provided for the creation of a reserve fund.[2] It provided that 10% of each assessment should be retained by the Association for application "to the liquidation of such cases of disability or death as may result in excess of the four cases which, in accordance with the law, should be liquidated monthly," and it further provided that this 10% deduction might "by well founded resolution" of the Board of Directors of the Association "be increased, provided the said board is justified therefor, for the purpose of preventing the accumulation of cases pending liquidation." The Board exercised its authority under the latter provision on October 3, 1944, by increasing the 10% minimum deduction for the reserve fund required by the statute to 20%; it exercised its authority again on September

---

\* By special designation.

1. Act No. 15, Laws of 1927; Act No. 150, Laws of 1937; Act No. 189, Laws of 1942.

2. At the same time the Legislature also provided that 5% of each assessment should be retained by the Association to reimburse employee members "who cease in their offices without being covered by death insurance at the time of their ceasing."

10, 1946, by a further increase from 20% to 40%; and it exercised its authority once more on February 25, 1947, by still another increase to 55%.

We turn now to the cases before us.

Carmen Denis, widow of Manuel Maldonado Lopez, brought suit on behalf of her minor son, Manuel Maldonado Denis, against the Association in the Superior Court of Puerto Rico, San Juan Part, alleging in substance that her deceased husband had been a member of the defendant's insurance system for over twenty years, that he had designated his son as his beneficiary, and that he had died on April 14, 1947 while enrolled under the defendant's insurance system. She further alleged that the assessments collected by the Association from its members on account of her husband's death amounted to $4,261, but that the Association, because of the deduction of 55% for the reserve fund and the 5% deduction mentioned in footnote 2, proposed to pay her son, the beneficiary, only 40% of the amount it had collected.

As relief she asked for a judgment declaring that the resolution of the defendant's Board of Directors fixing the deduction for the reserve fund at 55% was null and void, and that the defendant be ordered to liquidate her husband's policy "with only the 15% deduction authorized by Act No. 189 of 1942, with costs and attorney's fees."

At about the same time one Manuel Ruiz Rexach and some sixty-odd others, alleging themselves to be either disabled members, or the beneficiaries or heirs of deceased members, of the system, joined to bring suit against the Association for like relief in the same court. The Superior Court summarily dismissed both suits and on appeal the Supreme Court of Puerto Rico affirmed. Notices of appeal to this court under 28 U.S.C. § 1293 [3]

were filed in both cases.

Obviously no law or treaty of the United States is involved in either case. The appellants contend, however, that the Constitution is. In the Supreme Court of Puerto Rico they challenged the constitutional validity of the delegation by the Legislature to the Board of Directors of the Association of power in discretion to require deductions for the reserve fund in excess of the 10% authorized by the Act. The Supreme Court decided that question against them and they now expressly abandon it. Their present constitutional contention is that while the Board may have been "justified" in raising the deduction for the reserve fund over the minimum of 10% required by the Act, it was not "justified" in raising the deduction as high as 55%, wherefore they say that the Board's action lacked statutory authority and thus deprived them of their property without due process of law.

We do not pause to consider the appellants' present constitutional contention for it was not presented to the Supreme Court of Puerto Rico and this court held categorically in Prensa Insular De Puerto Rico v. People of Puerto Rico, 1951, 189 F.2d 1019 that we do not have appellate jurisdiction grounded upon the presence of a federal question to review final decisions of the Supreme Court of Puerto Rico unless the federal question relied upon to sustain our appellate jurisdiction was seasonably raised below. Thus, if we have appellate jurisdiction over these civil cases, it can only be on the ground that the "value in controversy" in each case exceeds $5,000 exclusive of interest and costs.

Clearly the "value in controversy" in the suit brought by Carmen Denis on behalf of her son is less than $5,000. The appeal from the judgment of the Su-

3. § 1293. Final decisions of Puerto Rico and Hawaii Supreme Courts.

  The courts of appeals for the First and Ninth Circuits shall have jurisdiction of appeals from all final decisions of the supreme courts of Puerto Rico and Hawaii, respectively in all cases involving the Constitution, laws or treaties of the United States or any authority exercised thereunder, in all habeas corpus proceedings, and in all other civil cases where the value in controversy exceeds $5,000, exclusive of interest and costs.

preme Court of Puerto Rico in that case must, therefore, be dismissed for lack of jurisdiction.

The claims of the sixty-odd plaintiffs who joined with Manuel Ruiz Rexach in the other suit undoubtedly add up in the aggregate to more than $5,000. But no one of the plaintiffs-appellants has shown that his individual claim is for more than that amount and the burden lies upon them to show the existence of jurisdictional facts. De La Torre v. National City Bank of New York, 1 Cir., 1939, 110 F.2d 381. Indeed, it is safe to assume from the record that none of the plaintiffs-appellants has a claim even approaching the value required for our jurisdiction. We have jurisdiction over this appeal, then, only if the appellants' claims can be aggregated.

The general rule governing the aggregation of the claims of several plaintiffs for jurisdictional purposes was summarized in Clay v. Field, 1891, 138 U.S. 464, 479, 480, 11 S.Ct. 419, 425, 34 L.Ed. 1044 wherein after citation of cases the Court said: "The general principle observed in all is that if several persons be joined in a suit in equity or admiralty, and have a common and undivided interest, though separable as between themselves, the amount of their joint claim or liability will be the test of jurisdiction; but where their interests are distinct, and they are joined for the sake of convenience only, and because they form a class of parties whose rights or liabilities arose out of the same transaction, or have relation to a common fund or mass of property sought to be administered, such distinct demands or liabilities cannot be aggregated together for the purpose of giving this court jurisdiction by appeal, but each must stand or fall by itself alone." The above language was quoted with approval in Wheless v. City of St. Louis, 1901, 180 U.S. 379, 382, 21 S.Ct. 402, 45 L.Ed. 583. In Thomson v. Gaskill, 1942, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 several later cases are cited and discussed and on pages 446 and 675 respectively

the same principle is restated by quotations from Lion Bonding & Surety Co. v. Karatz, 1923, 262 U.S. 77, 86, 43 S.Ct. 480, 67 L.Ed. 871 and Davis v. Schwartz, 1895, 155 U.S. 631, 647, 15 S.Ct. 237, 39 L.Ed. 289, to the effect that while claims may be aggregated to reach a jurisdictional amount in suits " 'in which several plaintiffs, having a common undivided interest, unite to enforce a single title or right,' " the claims of several plaintiffs may not be aggregated for jurisdictional purposes in suits wherein " 'the matters in dispute are separate and distinct, and are joined in one suit for convenience or economy' ". Furthermore on page 447 of 315 U.S. on page 675 of 62 S.Ct. the Court said with citation of additional authority that "Aggregation of plaintiffs' claim cannot be made merely because the claims are derived from a single instrument, * * * or because the plaintiffs have a community of interest".

Measured by the above test it is evident that the appellants' claims cannot be aggregated to reach the value in controversy required by the statute for our appellee jurisdiction. The plaintiffs in the Rexach suit are not seeking to enforce a single title or right in which they have a common and undivided interest, though separable as between themselves. On the contrary, each is asserting a separate and distinct interest, and not even an interest in a common fund, but in separate funds, for a separate assessment is levied for each beneficiary. They are joined together only for the sake of convenience and economy. The most that can be said is that they have a community of interest in reducing the amount of the deduction for the reserve fund, and that perhaps their claims are derived from a single instrument, the Act as amended. But the last quotation from Thomson v. Gaskill, supra, clearly indicates that these features, separately or together, are not enough to warrant aggregating their claims.

In general accord with this view see Sturgeon v. Great Lakes Steel Corp., 6 Cir., 1944, 143 F.2d 819, certiorari denied 1944, 323 U.S. 779, 65 S.Ct. 190, 89 L.Ed.

**82**

622; Knowles v. War Damage Corp., 1948, 83 U.S.App.D.C. 388, 171 F.2d 15, certiorari denied, 1949, 336 U.S. 914, 69 S.Ct. 604, 93 L.Ed. 1077; and Hughes v. Encyclopaedia Britannica, 7 Cir., 1952, 199 F.2d 295.

The appeals in both cases are dismissed for lack of appellate jurisdiction.