4

EDUARDO LÓPEZ LUIGGI, Plaintiff and Appellant, *v.* LUIS MUÑOZ MARÍN, GOVERNOR OF PUERTO RICO, ET AL., Defendants and Appellees.

No. 12004. Submitted March 12, 1957.—Decided June 24, 1957.

*Rubén Gaztambide Arrillaga* and *Antonio E. Rodas* for appellant. *J. B. Fernández Badillo, Attorney General,* and *Edgar S. Belaval, Assistant Attorney General,* for appellees.

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

Eduardo López Luiggi served as a policeman from 1934 to 1955. In the latter year he filed a claim with the Chief of Police for a pension under Act No. 189, Laws of Puerto Rico, 1951, 25 L.P.R.A. § § 361–74. His claim was based on three accidents which occurred in 1943, 1949 and 1955, respectively.[1]

A hearing on the claim was held before a Committee designated by the Chief of Police. The Committee made a recommendation disallowing the pension. Pursuant to this recommendation, the Chief of Police entered an order denying the pension.

---

[1] Under § 1 of Act No. 189, Laws of Puerto Rico, 1951, 25 L.P.R.A. § 361, a policeman is entitled to a pension "in cases of disability for physical work or of death" resulting from ". . . preventing or attempting to prevent the commission of an offense, or when arresting or trying to arrest a person who can be reasonably presumed to be connected with the commission of an offense." Section 1 also provides that members of the National Guard, the Insular Fire Service Force, Penal Guards —and by a 1956 amendment, 25 L.P.R.A. § 361, 1956 Supp., internal-revenue agents—are also covered by Act No. 189.

This pension consists of the full salary the officer was receiving. In a death case widows and minor beneficiaries are paid the said pension,

López thereupon filed a complaint in the Superior Court to establish his right to a pension pursuant to Act No. 189. The complaint alleged the following: First, in 1943 while struggling at a hospital with a prostitute who was trying to assault a nurse, the plaintiff suffered a fracture of the left knee, for which he was granted by the State Insurance Fund a 30 per cent disability of the physiological functions of his leg. Second, in 1949 while the plaintiff was investigating a burglary, he slipped and fell, suffering a sprain in the left knee and blows on the face and ear of the same side, for which the Fund granted him a 5 per cent disability of the leg. Third, in 1955 while the plaintiff was taking a person before a judge in connection with a burglary investigation, the said person fled. In pursuing him the plaintiff fell and received blows on the left knee and forearm, for which the Fund granted him a 10 per cent disability of the leg. The complaint alleged that as a result of these accidents the police physician had found the plaintiff totally disabled to perform the functions of his post, but that the Chief of Police had denied his claim for a pension under Act No. 189.

The defendants filed an answer admitting the foregoing facts, except they denied that in the 1955 accident the person involved had been arrested. They also alleged that the refusal of the Chief of Police to grant the plaintiff a pension under Act No. 189 "did not deprive him of his rights."

The Superior Court took no testimony in this case. Instead the trial court treated it as a petition for review of the decision of an administrative agency. It therefore confined itself to an examination of the record of the proof

---

which is exempt from attachment and from income tax. The pension is in addition to any compensation granted by the State Insurance Fund.

Section 9 provides: "The judicial proceedings necessary for the enforcement of the provisions of this Act shall be prosecuted by the Department of Justice, free from the payment of dues and fees to judicial officials . . . " . In this case the Secretary of Justice appears representing the defendants, while the plaintiff is represented by private counsel of his own choice.

which was submitted to the Committee solely to determine if the Chief of Police had committed any errors of law in following the recommendation of the Committee. The Superior Court stated as a conclusion of law that, under the facts involved in the three accidents as found by the Committee, none of the foregoing accidents came within the terms of Act No. 189. Accordingly, it entered a judgment for the defendants. The plaintiff appealed to this Court from that judgment.

We reversed the judgment of the Superior Court and directed it to conduct a trial on the facts in order to determine if the plaintiff was entitled to a pension under Act No. 189. The case is now before us on a motion for reconsideration by the defendants.

▄▄▄▄ We examine first the contention of the defendants that the decision of the Chief of Police denying the plaintiff's claim for a pension is final and binding and may not be judicially reviewed.[2] Act No. 189 is silent on this question. But such silence does not necessarily preclude judicial review. *Rivera* v. *Chancellor of the University, supra,* pp. 364–65; *Estep* v. *United States,* 327 U.S. 114, 120; *Stark* v. *Wickard,* 321 U.S. 288, 309; Schwartz, *French Administrative Law and the Common-Law World,* pp. 152–53. However " . . . implied judicial review does not automatically exist for decisions of all administrative bodies. Each case must be determined in its own setting on the basis of the intent of the Legislature." *Rivera* v. *Chancellor of the University, supra,* p. 365, footnote 1; *Emanuelli* v. *District Court,* 74 P.R.R. 506, 514.

---

[2] The defendants made no such contention in the trial court. Rather they filed an answer on the merits, and took the position that the trial court must determine—on the basis of the record made before the Committee designated by the Chief of Police—whether the latter committed any errors of law. Also, according to the defendants, the scope of review set forth in *Rivera* v. *Chancellor of the University,* 73 P.R.R. 361, applies here. See text of opinion preceding footnote 7.

There are cases holding that where bounties or privileges are conferred by the State under statutes providing that administrative decisions on claims therefor are final and conclusive, no judicial action may be brought against the State to enforce such a claim. *Mario Mercado e Hijos* v. *Benson*, 231 F.2d 251 (C.A. D.C., 1956); *Bravo* v. *Treasurer of Puerto Rico*, 76 P.R.R. 145, 155, affirmed in *Iglesias Costas* v. *Secretary of Finance*, 220 F.2d 651, 653 (C.A. 1, 1955); *Ford* v. *United States*, 230 F.2d 533 (C.A. 5, 1956); Schwartz, *supra*, pp. 157–59; Schwartz, 9 Ad.L.Bull. 75, 110–12 (1957); Jaffe, *Judicial Review: Question of Fact*, 69 Harv.L.Rev. 1020, 1045–52, and cases cited; *1956 Annual Survey of American Law*, Schwartz, *Administrative Law*, 32 N.Y.U.L.Rev. 75, 85, footnote 45, and cases cited; Gellhorn and Byse, *Administrative Law*, pp. 171–204; Forkosch, *Administrative Law*, pp 54–60, 585; Parker, *Administrative Law*, pp. 262–64. *Cf. Sacarello* v. *Retirement Board*, 75 P.R.R. 253, 262, discussed in footnote 6, *infra; Application of Iverson*, 39 N.W.2d 797 (Neb., 1949).[3]

The cases cited in the last paragraph precluding judicial review do not apply here. In the first place, there is no designation in Act No. 189 of an administrative official who shall determine in the first instance the right of an applicant for a pension under Act No. 189. We find nothing in Act No. 189 which directs, as the defendants contend, that the method used under Act No. 447, Laws of Puerto Rico, 1951, 3 L.P.R.A. § § 761 *et seq.*, to award pensions applies here. On the contrary, Act No. 189, in providing for a different and unique type of pension to be administered separate and apart from the general pension system, fails to

---

[3] Cases involving such problems as deportation of aliens play no role in situations like the instant case. *Cf. Jay* v. *Boyd*, 351 U.S. 345; *Heikkila* v. *Barber*, 345 U.S. 229; Schwartz, *French Administrative Law and the Common-Law World* 156.

designate an official who shall pass on claims thereunder.[4] Second, Act No. 189 contains no provision for a hearing in connection with a claim under Act No. 189.[5] Third, Act No. 189 does not, as in the cases cited in the preceding paragraph denying judicial review, specifically make the administrative determination final and bar judicial review. In view of these circumstances, we conclude that the Legislative Assembly did not intend to deny the claimant herein access to the courts. This is particularly true in view of the many cases in this jurisdiction in which the courts have passed on the rights of claimants for pensions. See 3 L.P.R.A. § 762, cases annotated at pp. 618–23; *Esteves* v. *Retirement Board*, 60 P.R.R. 96; *Jiménez* v. *Pension Board*, 61 P.R.R. 166; *In re Castro*, 73 P.R.R. 517; *Sacarello* v. *Retirement Board*, *supra*.[6]

---

[4] As noted subsequently, by necessity the executive may fill the gap in Act No. 189 and designate a particular official to pass on such applications. For example, the Chief of Police, the Chief of the Insular Fire Service, the Secretary of Justice for Penal Guards, and the Secretary of the Treasury for Internal Revenue agents may conceivably be designated to pass on claims of their subordinates. (These varying designations would tend to negative the alleged expertese of the deciding officials. See Schwartz, *French Administrative Law and the Common-Law World*, p. 193.) But the possibility of the designation of these officials and the creation of an administrative procedure *by executive action* does not invalidate our reasoning that the failure of Act No. 189 to vest a particular executive official or administrative agency with the power to pass on claims under Act No. 189 is one of the factors indicating that the Legislative Assembly did not intend to bar access to the courts where a claim for a pension under Act No. 189 was denied by executive action.

[5] A hearing was held in this case. But since none was required by Act No. 189, we must treat the statute—in determining legislative intent as to availability of judicial review—as though no hearing had been provided. *Doherty* v. *McElligott*, 16 N.Y.S.2d 489 (N.Y., 1939); Note, *Review of Administrative Action*, 70 Harv.L.Rev. 698, 703. While we agree with the *Doherty* case as to availability of judicial review under such circumstances, as hereafter noted in footnote 9, we do not agree with the view set forth in the *Doherty* case that a presumption of correctness attaches to the administrator's decision *in the kind of case involved herein* where no administrative hearing is provided by statute.

[6] While the Court was divided on whether the complaint in the *Sacarello* case stated a cause of action, we were unanimous on the principle that the claimant of a pension in that case was entitled to access

 We turn to the question of the scope of review in the case before us by the courts. We cannot agree with the defendants and the trial court that *Rivera* v. *Chancellor of the University, supra,* is controlling on this point. In the latter case the Legislature specifically provided for a hearing and decision by a particular administrative body. The questions presented there were (1) whether under the circumstances of that case there existed an implied judicial review of the decision of the administrative body which was required by statute to conduct a hearing and render a decision, and (2) the scope of such an implied judicial review, if we found it existed.

In answering the first question, we determined that an implied judicial review existed. On the second question, we said at p. 365 that " . . . we find no basis for holding that such a judicial review should consist of a trial *de novo.* On the contrary, the latter method is used to review the action of an administrative agency only when a statute specifically so provides. *Ortiz* v. *Venegas,* 43 P.R.R. 374; *Coll* v. *Todd, Mayor,* 35 P.R.R. 572; *Marín et al.* v. *Pagán,* 52 *D.P.R.* 966 per curiam; Davis, *supra,* p. 425 *et seq.* In the absence

to the courts. (The majority opinion at p. 262 and the dissenting opinion of Mr. Justice Negrón Fernández at pp. 267–68 point out that in accordance with the bounty or privilege cases cited above the action of the Board of Personnel as to government employment in cases other than removal was final as provided by statute. *Cf.* the dissenting opinion of Mr. Justice Belaval at pp. 278–81.)

In contending that no judicial review exists here, the defendants rely on cases which have held in the past that claimants have no vested rights in governmental pensions. See *Esteves* v. *Retirement Board, supra; MacLeod* v. *Fernández,* 101 F.2d 20 (C.A. 1, 1938); *Buscaglia, Treas.* v. *Tax Court,* 67 P.R.R. 532. We need not re-examine the holdings in these cases. It is enough to say that none of them deny access to the courts where the Legislative Assembly as here has not attempted to divest claimants of their rights to pensions.

*Cf. Cruz* v. *Insular Racing Commission,* 65 P.R.R. 705; *Las Monjas Racing Corp.* v. *Racing Commission,* 67 P.R.R. 42; *Mercado* v. *Insular Racing Commission,* 71 P.R.R. 376; *Archilla* v. *Racing Commission,* 72 P.R.R. 397; *Denis* v. *Savings and Loan Fund Ass'n,* 75 P.R.R. 798, appeal dismissed, 222 F.2d 78 (C.A. 1, 1955).

of such a statutory provision, the courts do not conduct a trial *de novo*. Rather they confine themselves to an examination of the record of the proceedings before the administrative agency, provided there is as in the instant case a complete record of such proceedings. And where as here the statute is also silent on the scope of review, the courts determine only whether the administrative body erred on questions of law. However, one of the questions of law is whether the administrative record contains substantial evidence to support the findings of fact of the administrative body . . . ".[7]

The problem as to scope of review here is different from that issue as presented in the *Rivera* case. As we have seen Act No. 189 makes no provision either for an administrative hearing and decision or for a judicial review of such an administrative decision.[8] If Act No. 189 had as in the *Rivera* case provided for an administrative hearing and decision by a specific administrative officer or agency, we

---

[7] To the same effect, *Ledesma, Administrator* v. *District Court*, 73 P.R.R. 379; *Ferenz* v. *Folsom*, 237 F.2d 46 (C.A. 3, 1956); *Schaffer* v. *United States*, 139 F.Supp. 444, 448 (U.S. Dist.Ct., S.D. 1956); *Hornauer* v. *Division of Alcoholic Beverage Control*, 123 A.2d 574 (N. J., 1956); Schwartz, 9 Ad.L.Bull. 75, 123–24; Goldstein, *Judicial Review of Administrative Action through Article 78 of the Civil Practice Act (1937–1951)*, 2 Syracuse L.Rev. 199, 202–03; Jaffe, *Judicial Review: Question of Fact*, 69 Harv.L.Rev. 1020, 1025, *et seq.*; Gellhorn and Byse, *supra, Scope of Judicial Review*, p. 424 *et seq.*; *1956 Annual Survey of American Law*, Schwartz, *Administrative Law*, 32 N.Y.U. L.Rev. pp.87–88; Davis on *Administrative Law* 868; Forkosch, *supra*, 716; Davis, *Cases on Administrative Law* 980.

[8] Policemen—as well as other government employees—who become disabled for duty as the result of a disability arising out of and in the course of employment are entitled to receive an occupational disability annuity pursuant to § 9 of Act No. 447, Laws of Puerto Rico, 1951, 3 L.P.R.A. § 769. But as the defendants agree, this section does not apply here. It covers an ordinary occupational disability; moreover, it provides for payment from the Retirement Fund and not as under Act No. 189 from the general funds of the Treasury. In the same way, § 11 of Act No. 447, 3 L.P.R.A. § 771, insofar as it establishes an administrative procedure for determination of pension claims, applies only to cases arising under § 769 and not to claims as here pursuant to Act No. 189. See footnotes 4 and 5.

might well conclude that an implied *limited* judicial review as described in the *Rivera* case existed here. However, in view of the silence of the statute on these questions, we find no basis for the creation by this Court of both an administrative procedure and a *limited* judicial review thereof.

The failure of the statute to establish an administrative procedure does not mean that the appropriate authorities may not make administrative determinations of claims for pensions under Act No. 189. See footnotes 4 and 5. But such internal machinery, created by executive action to fill a void in the statute, can not be the basis for limiting the authority of the courts. We have already held that once a pension is refused thereunder—in view of (1) the failure of Act No. 189 to provide for an administrative hearing, (2) the nature of the case, and (3) the absence of a statutory prohibition against judicial relief—the claimant cannot be precluded from filing his suit as here to enforce his alleged right to a pension under Act No. 189. And such a suit —in the absence of statutory provisions for (*a*) an administrative hearing and decision and (*b*) a limited judicial review of the latter—must perforce follow the regular course of an ordinary action where the trial court independently hears the evidence and makes its own findings of fact and conclusions of law.[9] We agree with the defendants that this

---

[9] "In reviewing administrative action taken without a hearing, the courts ordinarily review the administrator's findings of fact. In order to review these findings, evidence must be taken on all disputed issues of fact, since there is no adversary record upon which the court can rely." Note, *Review of Administrative Action*, 70 Harv.L.Rev. 698, 699; Jaffe, *Judicial Review: Constitutional and Jurisdictional Fact*, 70 Harv.L.Rev. 953, 966. Although a hearing was in fact held in the present case, none was required by the statute and we must therefore treat the case as though none had been held. See footnote 5.

The New York cases, while permitting judicial review and the introduction of evidence at the judicial hearing under such circumstances, attach a presumption of correctness to the administrator's decision, despite the lack of a statutory hearing before the latter. See authorities cited in footnote 5; *Eichleer* v. *McElligott*, 18 N.Y.S.2d 508 (N.Y., 1940); Goldstein, *supra*, 203–05. Without passing on whether we would adopt this formula in other situations, we cannot subscribe thereto in the type

is an unfortunate result and that a system of administrative determination by a single and continuing expert body, coupled with a limited judicial review on the record, would be more desirable. But such a formula must be established by the Legislative Assembly. We cannot create it by judicial fiat.[10]

■■ The trial court determined that under the facts found by the Pension Board the 1943 and 1949 accidents did not come within the terms of Act No. 189 as a question of law. We think it appropriate to point out that Act

---

of case before us. In the absence of an authoritative hearing as provided by statute before a designated expert who makes specific findings of fact based on testimony which he is required by statute to record and submit to the courts, we think that, until the Legislative Assembly acts, the courts should in a pension case exercise their independent judgment on both the facts and the law in the original judicial proceeding. This is in accord with the view expressed in Note, *supra*, 70 Harv.L.Rev. 698, 701: "Thus, the independent judicial determination of facts in dispute would seem proper in those cases in which the legislature has not *expressly* endowed the administrative determination with some presumption of correctness." (Italics ours). See *Hughes* v. *Board of Higher Education of City of N.Y.*, 130 N.E.2d 638 (N.Y., 1955). *Cf. New Hampshire Fire Ins. Co.* v. *Murray*, 105 F.2d 212 (C.A. 7, 1939); Jaffe, *Judicial Review: Constitutional and Jurisdictional Fact*, 70 Harv.L.Rev. 953, 967, footnote 48. See also, Jaffe, *Judicial Review: Question of Law*, 69 Harv. L. Rev. 239.

[10] We are aware of our language in *Rivera* v. *Chancellor of the University*, at p. 365 as quoted above that a trial *de novo* ". . . is used to review the action of an administrative agency only when a statute specifically so provides." But that language applies only where as in the *Rivera* case an administrative agency is specifically empowered by statute to conduct a hearing and render a decision. As we have seen no such procedure is established under Act No. 189. We can not, we reiterate, invent (1) an administrative proceeding, (2) a judicial review thereof and (3) a limitation of the scope of the said judicial review. The silence of Act No. 189 on all three of these points forces us to conclude that since the statute does not bar a judicial review, the claimant whose pension is refused administratively may sue therefor in an ordinary judicial action. *Cf. Arzola* v. *Loan Fund Ass'n*, 72 P.R.R. 394. Only the Legislative Assembly can correct this undesirable result.

In other cases the Superior Court has used the approach we adopt in this case: it has taken evidence and made its own findings of fact in cases arising under Act No. 189. *Montañez* v. *Roig, etc.*, No. 11646, and *González* v. *Governor of Puerto Rico, etc.*, No. 11895, affirmed today by judgments.

14

No. 189 contains no language indicating that it was to have retroactive effect.[11] No pension could therefore be awarded for those accidents as such since they occurred prior to the passage of Act No. 189 in 1951. See *Mgr. of State Insurance Fund* v. *Industrial Comm'n*, 77 P.R.R. 483. However, we disapprove of the following language of the trial court: "In addition, as the defendant well points out, the disability resulting to the plaintiff by virtue of this last accident was only 10 per cent of the physiological functions of the left knee, which in itself would not have totally disabled the plaintiff for physical work." On the contrary, Act No. 189 does not require a showing that the most recent accident in and of itself created the disability contemplated by Act No. 189. It would be sufficient if the latter—although it only aggravated an already existing partial disability—resulted in total disability to engage in physical work, provided the accident comes within the terms of Act No. 189. Cf. *Colón* v. *Industrial Commission*, 59 P.R.R. 842; *Cordero, Mgr.* v. *Industrial Commission*, 62 P.R.R. 621; *Cordero* v. *Industrial Commission*, 68 P.R.R. 118; *Atiles, Mgr.* v. *Industrial Commission*, 69 P.R.R. 586; *Salazar* v. *Indus. Comm.; Mgr. State Fund, Int.*, 76 P.R.R. 102; *Rivera* v. *Industrial Commission*, 79 P.R.R. 365; 1 Larson, *Workmen's Compensation Law* § 12.20, pp. 170–75.[12]

---

[11] Section 2 of Act No. 189 reads in part as follows: "There is hereby directed the payment to any member of the Insular Police Force of Puerto Rico . . . who becomes disabled to continue in the service . . . when such disability . . . occurs under the circumstances stated in Section 1 hereof, of an annual pension . . . ". The 1956 Amendment —25 L.P.R.A. § 362, 1956 Supp.—made no change in this respect.

[12] While these workmen's compensation cases are not strictly in point, we think the Legislative Assembly intended the same result in Act No. 189.

In the *Atiles, Salazar* and *Rivera* cases this Court was divided on the question of whether an accident had occurred. That problem does not exist here. The Court is unanimous on the proposition that if the proof shows that an accident occurred, a claimant—either in a workman's compensation case or under the definition found in Act No. 189—is entitled to prevail where the accident aggravated a previously existing condition. The majority opinion in the *Salazar* case concedes this point as to workmen's compensation. It says at p. 112: "If Dr. Salazar, in the course of administering X-ray treatments to patients, had burned his hand on

We shall remand the case for the taking of testimony, findings of fact and conclusions of law by the trial court. There are at least two questions with which the trial court will be faced. First, it must find the facts as to the 1955 accident, and then decide as a question of law if that kind of accident comes within the terms of Act No. 189. Second, assuming the first question is answered in the affirmative, it must determine whether the 1955 accident in itself or by way of aggravation "disabled the plaintiff for physical work". We intimate no views on any of these questions.[13]

The judgment of the Superior Court will be reversed and the case remanded for a trial on the merits.

Mr. Justice Belaval concurs in the result.

Mr. Justice Marrero did not participate herein.

---

one or several reasonably identifiable occasions and had thereby contracted *or aggravated a cancer he already had,* the case would be one of injury by accident." (Italics ours.)

[13] In discussing the problem of determining the coverage of Act No. 189 as a question of law, the defendants' brief cites by way of analogy *Holmberg* v. *City of Oakland,* 203 Pac. 167, 168, second column (Calif., 1921); *Buckley* v. *Roche,* 4 P.2d 929 (Calif., 1931); *Vernon* v. *Fireman's Pension Fund of Philadelphia,* 52 A.2d 199 (Pa., 1947); *Sabathier* v. *Board of Trustees,* 72 So.2d 1 (La., 1954). We leave for another day the determination of whether any of these cases shed any light on the coverage of Act No. 189.